**Ex parte Forrest E. SEYMOUR.**

**No. 09 84 383 CV.**

Court of Appeals of Texas, Beaumont.

Jan. 31, 1985.

Rehearing Denied Feb. 20, 1985.

Steven E. Hollimon, East Texas Legal Services, Inc., Beaumont, for appellant.

Everett Lord, Beaumont, Melvin Boneau, Port Arthur, for appellee.

## OPINION

BURGESS, Justice.

Relator filed an application for writ of habeas corpus alleging illegal confinement in the Jefferson County jail. A brief recitation of the sequence of events is necessary. On March 18, 1983, relator was divorced and was required to make periodic child support payments. On October 25, 1983, the 317th District Court of Jefferson County, Texas, found relator in contempt of court for failing to make the child support payments previously ordered and placed him on probation for five years. On November 6, 1984, relator's ex-wife filed a sworn motion to revoke his probation alleging non-compliance with the order of probation. The 317th District Judge ordered a warrant issued instanter for the production of relator. A warrant was issued on November 8, 1984, and relator was incarcerated in the Jefferson County Jail on December 21, 1984. His application for writ of habeas corpus was filed in this court on December 28, 1984.

1. Actually upon the filing of the application for writ of habeas corpus, the relator was allowed

Relator, alleges his confinement [1] is illegal for two reasons. First, although the relator acknowledges he is being held as a result of a warrant, he alleges the issuance of the warrant was illegal because he was not given any notice and was denied due process in violation of the U.S. and Texas Constitutions.

*Tex.Fam.Code Ann. sec. 14.12(d)* (Vernon Pamph.Supp.1985) states:

"If a probationer violates a condition of probation, the court may cause the probationer's arrest by warrant as in other cases...."

Relator cites no cases which hold a statute such as this unconstitutional, although it could be applied as such. Here, the warrant was issued as a result of sworn motion which included a copy of official court records. Certainly, this is minimal due process and thus the warrant was properly issued.

Relator's second allegation is he has not been brought promptly before the court causing the arrest and has not been afforded a hearing on the motion to revoke his probation.

*Tex.Fam.Code Ann. sec. 14.12(d)* (Vernon Pamph.Supp.1985) further states in pertinent part:

"An arrested probationer shall be brought promptly before the court causing the arrest, and the court, after a hearing without a jury, may continue, modify, or revoke the probation as the evidence warrants."

Partially recalling the sequence of events, the relator was confined in the Jefferson County, Texas Jail on December 21, 1984, a Friday. Because of the weekend, December 22 and 23, and a holiday period, December 24 and 25, the next working day was December 26, 1984. As of the filing of the application for writ of habeas corpus, December 28, 1984, the relator had not been brought before the court causing the arrest, nor had a hearing on the motion to

bail by the Court of Appeals.

revoke his probation been held. Did the failure to promptly bring the probationer before the court result in an illegal confinement subject to habeas corpus relief? We believe so.

■ Obviously, the legislature wanted arrested probationers brought before the court causing the arrest or they would not have said so in clear and concise language. Thus, the only question is, what is "promptly"? We believe a reasonable definition of "promptly" is seventy-two (72) hours from the time the arrested probationer arrives in the county jail of the court causing the arrest, excluding weekends and holiday periods. This is not to hold that every confinement, in this situation, beyond that period, is illegal *per se*, only that confinement past that period would be a *prima facie* illegal confinement, subject to a showing of extraordinary circumstances.

■ Further, the hearing contemplated by the statute need not be held within 72 hours. We only hold the arrested probationer should be brought before the court for the purposes of determining such matters as whether the probationer is represented by counsel or is indigent, if bail is appropriate, to advise the probationer of the date, time and place of the hearing, etc.

■ The relator, having been arrested and confined in the county jail for a period in excess of 72 hours and not having been brought before the court causing his arrest within that time, has been illegally confined and is entitled to habeas corpus relief.

It is ordered that relator be discharged from such confinement and released from any liability on his bond.

BROOKSHIRE, Justice, dissenting.

With respect, this dissent is filed. Relator has the heavy and onerous burden of showing that the District Court's order was void and not merely voidable. These habeas corpus proceedings are a collateral attack on the District Judge's orders. Habeas corpus is not an appeal but an original proceeding in this case. There is no showing in this case that the order of arrest was void.

There is no statement of facts before us. There are several documents before us. Among the documentary evidence is a signal and important document that shows an approved and enforceable order of support, which was actually signed and approved by the Relator, Forrest E. Seymour, and also the Respondent, Lena Marie Seymour, in the judgment of divorce, dated March 18, 1983. There is further documentary evidence, which was admitted to be correct, that an order of the court holding Relator in contempt was entered on the 25th day of October, 1983, and finding an arrearage of delinquent child support payments in the amount of $900.00. The order of October 25, 1983, also sets certain terms for probation of Relator. At that contempt hearing the Relator was represented by an able counsellor. The decree of contempt was signed by both Forrest E. Seymour and his attorney. They both approved it. Among other things, Relator's signature acknowledged and approved of the following condition of probation:

"I have received a copy of this order from the Clerk and fully understand each of the conditions imposed, and I understand that this probation could be revoked for any violation. *I further understand that in the event I fail to make child support payments as ordered above, a warrant will be issued for my arrest."* (Emphasis added)

A motion to revoke probation, setting forth a violation, was filed. The motion was sworn to by Respondent. She requested that a warrant issue. There was exhibited to the trial judge, as "Exhibit A", the Jefferson County Child support bookkeeping ledger showing lack of payment. Subsequent to this motion a capias was issued on November 8, 1984. However, the Relator was not arrested until the 21st day of December, 1984, at 4:41 P.M. which was on the Friday prior to the weekend of the annual observance of the Christmas holidays. The Jefferson County Courthouse did reopen for business on Wednesday, De-

cember 26, 1984. Two days later, on December 28, 1984, the application for writ of habeas corpus was filed.

The legislature has mandated, by *TEX. FAM.CODE ANN. sec. 14.12(a)* (Vernon Pamph.Supp.1985) that:

"If the court finds that a person who has been ordered to make payment for the support of a child is in contempt of court for the failure or refusal to make a payment, the court may suspend the imposition of the court's order of commitment and place the person on probation on the condition *that the person shall continue the court-ordered child support payments* with court costs *and on other reasonable conditions that the court requires.*" (Emphasis added)

*Section 14.12(d)* provides:

"If a probationer violates a condition of probation, the court may cause the probationer's arrest by warrant as in other cases. An arrested probationer shall be brought *promptly before the court causing the arrest, and the court, after a hearing without a jury, may continue, modify, or revoke the probation as the evidence warrants.*" (Emphasis added) .

I think the trial judge acted in accordance with the mandate and command of the Legislature. I agree that an arrested probationer shall be brought promptly before the court causing the arrest. In our instant case, the unusual sequence of a weekend plus the holidays of Christmas Eve and Christmas Day intervened. There is no showing in the record, as I read it, that when the Relator obtained able counsel, any realistic attempt was made causing the Relator to be promptly brought before the issuing court for a hearing. Nevertheless, if this had been done, the court, under *Sec. 14.12(d)*, had broad discretion in continuing, modifying or revoking the probation. It is not the position of the Relator, as I understand it, that he was not in contempt of court or, for some reason, could not pay the child support. He has not shown abuse by the trial judge in relation to *Sec. 14.12(d)* under this record.

In view of the numerous proceedings involving the continued problem of child support, it would seem to me that in this case, under all the facts, a reasonable and prudent manner of resolving it would be to remand the case to the trial judge for a very early hearing, the Relator remaining at liberty under his nominal, existing bond. This would require a reasonable amount of time because the Relator would desire to be present with his attorney, as well as the Jefferson County Child Support Office and its records, as well as the Respondent and her attorney of record. *See Ex Parte Werblud*, 536 S.W.2d 542 (Tex.1976). As I understand the court's opinion, a grant of the writ of habeas corpus would require unnecessary expenses which could be avoided in favor of economy and efficiency in the judicial system and in the enforcement of child support payments.

I would construe the word "promptly" to mean a reasonable amount of time considering all the attendant facts and circumstances and considering all the rights of both the Relator and the Respondent and the rights of the infant, to have continuing, regular, periodical support payments. To decree a hard and fast rule of 72 hours would seem to be impractical especially in certain judicial districts that have multiple counties.

A copy of the October 25, 1983, decree was attached to *Relator's pleadings as Exhibit "B".* Therein, Relator was found guilty of contempt in that he willfully failed and refused to pay child support as previously ordered in the amount of $900.00 in arrearage and that was the decree which contained the agreement of Forrest Seymour and his attorney of record that Seymour did:

"... [F]urther understand that in the event I fail to make child support payments as ordered above, a warrant will be issued for my arrest."

Relator verified that he had been informed that he "would lose his job at Taco Bell, in Vidor, Texas, unless he returns to work." He also swore that he was remar-

ried, lived in Vidor and had been employed by Taco Bell in Vidor for over a year.

The small child involved is Thomas Joseph Seymour, born in Galveston, Texas, on January 25, 1982, and is only 3 years old.

Relator relies on *Ex Parte Hart,* 520 S.W.2d 952 (Tex.Civ.App.—Dallas 1975, no writ). But that case was decided before *TEX.FAM.CODE ANN. sec. 14.12* (Vernon Pamph.Supp.1985) was added by Acts 1981, 67th Leg. p. 2536, ch. 674, sec. 1, eff. Sept. 1, 1981.

Relator also places major reliance on *Ridgway v. Baker,* 720 F.2d 1409 (5th Cir. 1983). *Ridgway supra,* stresses that due process requires the assistance of counsel for an accused contemnor in constructive contempt cases and an indigent person who faces imprisonment is entitled to appointed counsel. I agree completely, but there is no showing in our record that Seymour was indigent, having a steady job with Taco Bell; additionally, our record is devoid of any request by the Relator *to the court to appoint an attorney. Ridgway, supra,* at 1415, states:

"Under Texas law, if the accused contemnor does not have the means to pay the arrearage, he cannot be committed to jail for the purpose of coercing him to make such payments. A contemnor can be incarcerated only for failure to pay with his present funds, in which case he is not indigent, *or for what the state classifies as criminal contempt, in punishment for his past contemptuous behavior, and then only if it is determined that he could have made those payments when they became due."* (Emphasis added)

But *Ridgway, supra,* also approves this holding:

"Once the state has proved *mere delinquency in payments,* the accused has the burden of proving that his failure to pay was not contemptuous. He must present evidence establishing not only that he has no funds but also that he has no source of funds. *Ex Parte Rohleder,*

424 S.W.2d 891, 892 (Tex.1967). Such proof consists of these elements:

(1) that the relator lacks sufficient personal or real property which could be sold or mortgaged to raise the needed sum; and

(2) that the relator has unsuccessfully attempted to borrow the sum from financial institutions ...; and

(3) that the relator knows of no other source, including relatives, from whom the sum could be borrowed or otherwise secured." (Emphasis added)

But showing his indigency and his non-contemptuous failure are burdens that must be borne by the Relator. It cannot be said that Relator was a stranger to a proceeding involving contempt of court, since he had been before the same judge in October, 1983, with counsel and found in contempt.

Also, from the documentary evidence before the judge, there is a sworn statement of total arrearage of $2,225.00 through 3–16–84 under the 3–18–83 order—also arrearage of $765.00 through 3–16–84 under the 10–25–83 order of probation.

The return was not filed in the court's record until January 3, 1985, which was probably the earliest time the trial judge could have had official notice that the Relator was incarcerated in the Jefferson County Jail.

The warrant of arrest was issued pursuant to the legislative mandate as provided by the *TEX.FAM.CODE ANN. sec. 14.12* (Vernon Pamph.Supp.1985), as well as the *Relator's agreement.* There is no affirmative showing in our record that the Relator asked for a hearing in the issuing court; that the Relator requested an indigency hearing; that the trial court, systematically or habitually, denied attorneys to indigent persons. I find no lack of due process. I would remand and direct the trial judge to conduct a hearing forthwith without the necessity of starting all over again on the motion to revoke probation, the Relator remaining at liberty.

This dissent is respectfully submitted.