**In re Kenneth Dale ALEXANDER.**

**No. 04–07–00815–CV.**

Court of Appeals of Texas, San Antonio.

Dec. 28, 2007.

Motion to Publish Opinion Granted Jan. 8, 2008.

---

David B. Black, Vanderpool, TX, for Appellant.

Kurtis S. Rudkin, Law Office of Kurtis S. Rudkin, Boerne, TX, K.H. Schneider, County Attorney, Bandera, TX, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, SANDEE BRYAN MARION, Justice.

## MEMORANDUM OPINION

Opinion by CATHERINE STONE, Justice.

Relator Kenneth Dale Alexander filed a petition for a writ of habeas corpus in this court seeking release from custody. Alexander was arrested and confined in the Bandera County Jail after a motion to revoke community supervision was filed in his child support enforcement case. In his petition, Alexander claims he was unlawfully confined because no revocation hearing was held, the underlying support order was unenforceable by contempt, and the contempt and commitment orders were

void. If we conclude Alexander was deprived of his liberty without due process of law, or if we conclude the contempt and commitment orders were void, we must order Alexander's release. *See In re Henry,* 154 S.W.3d 594, 596 (Tex.2005); *Ex parte Swate,* 922 S.W.2d 122, 124 (Tex. 1996). We reach both conclusions here and grant the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

Alexander and Kristi Robyn Bates were divorced in November 1994. At the time, the couple had two young children. Under the divorce decree, Alexander was ordered to pay Bates child support; however, the frequency and due dates of Alexander's child support payments were unclear from the face of the support order. The support order was never clarified or modified.

In 2002, Bates moved to enforce the child support provisions, claiming Alexander failed to make child support payments as ordered. After a jury trial, Alexander was found to be in criminal contempt for failing to pay monthly child support in the amount of $189.58 for ninety-four months from December 1994 to September 2002. Alexander was sentenced to six months in jail for each violation, and the sentences were to run consecutively. With the exception of the December 1994 violation, the trial court suspended the sentences and placed Alexander on community supervision for ten years. The terms of Alexander's community supervision required him to make child support payments "in the full amount required and as proscribed [sic] in the Final Decree of Divorce." Alexander apparently served his sentence for the December 1994 violation and was released.

In 2003, Bates filed a motion to revoke community supervision, alleging Alexander failed to comply with the terms of his community supervision by not making pay-

ments in accordance with the divorce decree. On September 9, 2003, the trial court signed an order authorizing Alexander's arrest pending a revocation hearing. Alexander was not arrested until August 24, 2007. Although counsel was appointed to represent Alexander, no revocation hearing was held.

Alexander filed his petition for a writ of habeas corpus in this court on November 16, 2007. We requested a response, but none was filed. Recognizing the petition's probable merit, we ordered Alexander temporarily released on bond. *See* TEX. R.APP. P. 52.8(b)(3).

### HEARING ON MOTION TO REVOKE COMMUNITY SUPERVISION

■ If an obligor is found in contempt of court for failure to pay child support and is sentenced to jail, the court may suspend the commitment and place the obligor on community supervision. TEX. FAM.CODE ANN. § 157.165 (Vernon 2002). A party affected by the community supervision order may file a verified motion alleging the obligor has violated a term or condition of community supervision. TEX. FAM.CODE ANN. § 157.214 (Vernon 2002). If the motion to revoke community supervision alleges a prima facie case that the obligor has violated a term or condition of community supervision, the court may order the obligor's arrest by warrant. TEX. FAM.CODE ANN. § 157.215(a) (Vernon 2002). Once arrested, the obligor must be brought promptly before the court. TEX. FAM.CODE ANN. § 157.215(b) (Vernon 2002); *see also Ex parte Seymour,* 688 S.W.2d 139, 141 (Tex.App.-Beaumont 1985, orig. proceeding) (applying prior statute). An obligor is entitled to a hearing on a motion to revoke community supervision. TEX. FAM.CODE ANN. § 157.216(a), (b) (Vernon Supp.2007); *In the Interest of B.C.C.,* 187 S.W.3d 721, 724 (Tex.App.-Tyler 2006, no

pet.). After the revocation hearing, the court may continue, modify, or revoke the community supervision. TEX. FAM.CODE ANN. § 157.216(c) (Vernon Supp.2007).

■ Due process requires a trial court to hold a hearing on a revocation motion soon after the obligor is arrested. *See* TEX. FAM.CODE ANN. § 157.216(a),(b)(Vernon Supp.2007); *see also Ex parte Seymour,* 688 S.W.2d at 141; *Ex parte Gonzales,* 606 S.W.2d 5, 6 (Tex.Civ.App.-Amarillo 1980, orig. proceeding) (contemnor was entitled to a hearing before suspended commitment was rescinded). Section 157.216 of the Texas Family Code sets out the time frame for holding a revocation hearing in an enforcement case. The former version of section 157.216, the statute applicable here, required a revocation hearing to be held on or before the first working day after the obligor was arrested. Acts 1995, 74th Leg., ch. 20, § 1, eff. April 20, 1995 (current version at TEX. FAM.CODE ANN. § 157.216(a),(b) (Vernon Supp.2007)). This version of section 157.216 further provided that if the trial court was unavailable for a hearing on that date, the hearing should be held not later than the first working day after the date the trial court became available, and not later than the third working day after the date the obligor was arrested.[2] *Id.*

In this case, Alexander was in custody for approximately three months and no revocation hearing was held. This is well beyond the time prescribed in section 157.216 of the Texas Family Code. No explanation for this delay has been provided to this court and none is apparent from the record. Given these circumstances, we conclude Alexander was deprived of his liberty without due process of law. *See Ex parte Seymour,* 688 S.W.2d at 141; *Ex parte Gonzales,* 606 S.W.2d at 6.

## VALIDITY OF CONTEMPT AND COMMITMENT ORDERS

■ A contempt order may not be based on an ambiguous order. *Ex parte Price,* 741 S.W.2d 366, 367–368 (Tex.1987); *In re Ragland,* 973 S.W.2d 769, 771 (Tex. App.-Tyler 1998, orig. proceeding). When a trial court punishes a party for disobedience of a written order, the order itself must be definite and certain. *Ex parte Slavin,* 412 S.W.2d 43, 45 (Tex.1967). To be enforceable by contempt, the written order must set forth the terms of compliance clearly and specifically so that the person charged with obeying the order will readily know exactly what duties and obligations are imposed on him. *Ex parte Acker,* 949 S.W.2d 314, 317 (Tex.1997). A written order that is equivocal or susceptible to more than one interpretation is not punishable by contempt. *In re Houston,* 92 S.W.3d 870, 877 (Tex.App.-Houston [14th Dist.] 2002, orig. proceeding).

Alexander correctly argues the support order in the divorce decree is ambiguous and unenforceable by contempt. Under

---

**2.** Section 157.216 was amended effective September 1, 2007. The former version of section 157.216 remains in effect for enforcement proceedings commenced before September 1, 2007. The current version provides:

(a) The court shall hold a hearing without a jury not later than the third working day after the date the respondent is arrested under Section 157.215. If the court is unavailable for a hearing on that date, the hearing shall be held not later than the third working day after the date the court becomes available.

(b) The hearing under this section may not be held later than the seventh working day after the date the respondent is arrested.

(c) After the hearing, the court may continue, modify, or revoke the community supervision.

*See* TEX. FAM.CODE ANN. 157.216 (Vernon Supp. 2007).

the provisions in the decree, Alexander was ordered to pay Bates

> child support of $43.75 per child biweekly, with the first payment being due and payable on December 8, 1994, and a like payment being due and payable on the same day of the earliest occurrence of one of the following events: (1) any child reaches the age of 18 years...; (2) any child marries; (3) any child dies; (4) any child's disabilities are otherwise removed...; (5) any child is otherwise emancipated; or (6) further order modifying this child support.

This support order is subject to different interpretations. On the one hand, the support order could be construed as not requiring any regular, periodic payments until after the occurrence of one of the six enumerated events. On the other hand, the support order could be construed as requiring biweekly or monthly payments.

As written, the support order failed to set out the terms of compliance clearly and specifically so that Alexander could have readily known exactly what duties and obligations were imposed on him. Absent a clarification order, this support order was not enforceable by contempt.[3] *See Acker,* 949 S.W.2d at 317 (order was unenforceable by contempt when there was no way to determine with certainty the year obligation began); *Ex parte Longoria,* 671 S.W.2d 673, 675 (Tex.App.-San Antonio 1984, orig. proceeding) (ambiguous support order was unenforceable by contempt). We conclude the contempt and commitment orders in this case are void because they are based on an ambiguous support order.

■ Alexander also contends the contempt and commitment orders are void due to discrepancies between the support order and the contempt and commitment orders. We agree. One purpose of a contempt order is to notify the contemnor of how he has violated the provisions of the previous order. *In re Nesevitch,* 93 S.W.3d 510, 513 (Tex.App.-Houston [14th Dist.] 2002, orig. proceeding). Thus, it is well-established that a contempt order must clearly state how the court's earlier order has been violated. *Ex parte Shaklee,* 939 S.W.2d 144, 145 (Tex.1997).

The contempt and commitment orders in this case list Alexander's violations by month and year only, ignoring the evident ambiguities in the support order by failing to mention any particular due dates. Additionally, the contempt and commitment orders recite that Alexander was ordered to pay "child support in the amount of $43.75 per child biweekly, with the first payment being due and payable on December 8, 1994, and a like payment being due and payable on the same day of *each month thereafter until* the earliest occurrence of one of the following events..." (Emphasis added). This recitation fails to accurately reflect the actual order. Moreover, this recitation creates an additional ambiguity because biweekly payments do not translate into like payments payable on the same day of each month. For these reasons, the contempt and commitment orders punishing Alexander for violating the support order and placing him on community supervision are void.[4] *See In re*

---

3. A court may clarify an order rendered by the court if it finds that the order is not specific enough to be enforced by contempt. *See* TEX. FAM.CODE ANN. § 157.421 (Vernon 2002); *see also In re A.C.B.,* 103 S.W.3d 570, 577 (Tex.App.-San Antonio 2003, no pet.). In a clarification order, the court must provide a reasonable time for compliance. *See* TEX. FAM. CODE ANN. § 157.426 (Vernon 2002). After the time for compliance has expired, the clarification order may be enforced by contempt. *Id.*

4. We further recognize that the order suspending Alexander's commitment and placing him on community supervision perpetuates

*Broussard*, 112 S.W.3d 827, 831 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding) (contempt order was void because it found violations of requirements not found in any prior order); *In re Nesevitch*, 93 S.W.3d at 513 (contempt order was void when it failed to set out with particularity the acts or omissions the subject of the order).

### CONCLUSION

The purpose of a habeas corpus proceeding is not to determine the ultimate guilt or innocence of the relator, but to ascertain whether the relator has been unlawfully confined. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex.1979). A writ of habeas corpus will issue when the relator has not been afforded due process, or when the order requiring confinement is void. *In re Henry*, 154 S.W.3d at 596. In this case, the absence of a revocation hearing and the void contempt and commitment orders render Alexander's confinement unlawful. The petition for a writ of habeas corpus is granted. We order Alexander discharged from custody and released from the bond set by this court on November 28, 2007.

the faulty support order. As a term and condition of his community supervision, Alexander was ordered to make child support payments "as proscribed [sic] in the Final Decree of Divorce."